Good morning, Your Honor. Michael Mayock. I'm appearing on behalf of Sylvester Ijewere. I think we got the name. Maybe we won't have to be using it too much. Essentially, there are two arguments that have been advanced. One has to do with the decision made by the court regarding the abuse of position of trust. The defense in the case believes and strongly has argued that that is not an element that should apply to an individual who provides durable medical equipment such as power wheelchairs, which is what Mr. Ijewere did after receiving orders from people who are either clerical staff for a physician or the physician himself. That sort of a person who then goes... That's not incorrect way of stating it quite, but the charge and the conviction is there were no valid orders and this was a fraud. So it's not as though he's receiving valid orders, he's just filling them and so on. No, this is a fraudulent scheme. Well, I understand that there apparently was fraud that took place. There's not a question about that. The situation seems to be one where if you have a physician, and in this case there were a number of doctors who were involved who had clerical staff who would talk to patients. Those people would probably get kickbacks. I assume that's what the practice was, but it was directed through the doctor's office and the doctors never got prosecuted, but my client who was the one who delivered these particular wheelchairs was charged and that... Well, he was the one who submitted the fraudulent claims to Medicare. He submitted the claims, but they were supported allegedly by the doctor or a doctor's staff member, such as Dr. Galls is one of the doctors who was greatly involved in this and the other would have been his secretary or office manager, Teresa Nguyen, who was engaged in writing up subscriptions. Now, here's the question. Is my client, Sylvester Isuer, in a position where he can be said to have known exactly what was going to happen, whether these false prescriptions were something he knew about or whether he just got them and then said, fine, I'll fill them and he got paid for it? Well, I think the test is whether or not he's exercising professional or managerial discretion. Isn't that the wording of the test? That's correct. And he isn't. He's basically acting in compliance with somebody... Are you saying now he shouldn't have pled guilty? He did plead guilty. He pled guilty... If I were you, I'd have to assume you're saying he shouldn't have done that. Well, we have basically three levels of what finally happened and calculating whether certain items that were ordered, and let's just make them, for purposes of argument, power wheelchairs, because that seems to be the most expensive of the items. As far as the power wheelchairs are concerned, the questions there go to whether there was a fraudulent claim, whether there was an insufficient claim or a questionable claim, and whether these were arguable claims. So there were three different areas of interest that could be looked at. He pled guilty to... He pled guilty pursuant to a plea agreement. What was he... I know it was a plea agreement. Yes. And I don't think you want to set it aside and start again, I don't think. No, we're not asking that to happen. So? Only that the calculations that were being made for... under the level of loss, that they should be... You're just having trouble following your argument when you're arguing about a client who pled guilty to Medicare fraud. Yes, he did. And part of the question that has to be addressed, there were two separate issues. One was abuse of the position of trust. And second, whether there should be a 10-level as opposed to a 12-level increase for the loss amount. So if we're dealing with just the secondary issue involving whether it's a 10-level loss or a 12-level loss, that's the question. The issue is... Can I ask you before we get to that on the abuse of trust, would the doctors, assuming this all operated the way it should have operated, would the doctors have... and the doctors wrote prescriptions that they shouldn't have, would they have abused their position of trust? They would have. That's their position of trust. It should be the doctor's position of trust, not somebody who provides the medical equipment after receipt of an order from the doctor saying, this is okay. But he knew that those were not okay. So how does he differ? I mean, he's basically entrusted by Medicare with the responsibility to play an administrative role in this process of supplying wheelchairs to people who need it. And he breaches his trust in the same way a doctor would by writing a phony prescription to begin with. He's at the very least aiding and abetting the doctors in an abuse of trust. He's the one who supplies the wheelchairs. After a doctor or a doctor's staff member writes a prescription saying, go ahead and get this wheelchair for a particular person. Now, some of the wheelchairs are legitimate and some aren't legitimate. You keep confusing the argument. He pled guilty. We have to assume they were all, to what he pled guilty to, they were all legitimate. So you stop sort of confusing the argument by dealing with, you know, a claim, some sort of a colorable claim of innocence just confuses things. Well, it is a confusing area. I will concede that. This case isn't confusing at the moment. Now, maybe you're going to make it so, but at the moment it's pretty clear. He entered the guilty plea. There's no doubt what went on. Is there any doubt about what happened? No, there's no doubt he did enter the guilty plea. The question is... Well, I mean, other than that. Well, the question goes to the calculations of particularly of loss and whether he was in a position of trust or whether that position of trust should be laid on the doctor rather than my client. Well, both could be abusing trust. That is to say, merely because the doctor might have been abusing a position of trust doesn't mean your client was not also abusing a position of trust. One of the arguments that I think is no longer available to the government is the argument that this fraud was difficult to detect and therefore it was an abuse of trust. And I also think it's unavailable to the government. The government made the argument that there's an abuse of trust in any case of fraud because if that were the case, you wouldn't have to talk about abuse of trust. All you have to do is talk about fraud. So the fact that he makes a claim that fraudulent is not necessarily going to be an abuse of trust. I'm trying to figure out what our new phrase, sort of professional or managerial discretion means with respect to your client. Now, if he were doing his job properly with a legitimate prescription from a doctor, his job is not limited merely to sending out the wheelchair. His job includes going out to see the patient, put the patient in the wheelchair, see if the wheelchair works properly, see if in fact it fits the needs of the patient and so on. I'm assuming that's going to be the argument I'm going to hear from the government. How do you respond to that argument? Well, there are individuals who receive wheelchairs and are given training in the wheelchair. Sometimes, I guess, the wheelchairs are dropped off or given to a person who had an order that came from a doctor saying that they wanted to have a power wheelchair. Some people may not have needed the power wheelchair. See, that's one of the things I'm driving at. I assume that if he's performing his job properly, there will be an occasional patient. He comes out and sees the power wheelchair and so on and the patient together. He says, you know, this really isn't going to work. You need X instead of Y. Is that going to be the case sometimes? It could be. When somebody arrives with a power wheelchair and then talks to the patient, suppose the patient says, I didn't even order a power wheelchair. Where did this come from? Under those circumstances, clearly, my client would be directed or would be required to return that wheelchair back to the source where it came from rather than give it to the patient. But if assuming that the patient says, I want the power wheelchair and accepts it, which is what happened in almost every case, then that is something that's slightly different. Okay. Your time has just run. Let's hear from the government, but we will give you a chance to respond. Thank you. May it please the Court, Ellen Meltzer on behalf of the United States Department of Justice. Judge Fletcher, the government agrees with your statement a moment ago that not every single case of fraud would result in an abuse of trust enhancement. As far as the difficulty in detecting the crime, that is, we agree, also insufficient for the abuse of trust enhancement in and of itself. But the difficulty in detecting the crime goes to the second part of the equation, which is that the position of trust facilitated the commission or concealment of the crime. And it's my understanding from Contreras that the government still does need to show that. As far as Mr. Don't you need to have a fiduciary relationship to begin with, and then given the fiduciary relationship, the person's, the extent of discretion that the person has becomes relevant. I mean, suppose a vendor, West, sold books to the library, sent bills for books they didn't deliver. Is there a fiduciary obligation on the part, does West owe the government any fiduciary obligation that would result in an abuse of trust enhancement to someone at West who made the decision to do that? I believe it would be our position that there is no abuse of trust there, that that's purely a commercial arm's-length transaction. Now, what, how does this differ in effect? He's selling wheelchairs to, let's say, a third-party beneficiary instead of the government. Because Medicare And he's billing the government. Where is the, how does the fiduciary obligation arise? I think the difference is that Medicare and its fiscal intermediaries have to put their trust in suppliers of equipment and physicians because they are unable to audit every provider or every physician who submits claims within the system. So aren't you then back to the issue of it's difficult to discover? That's only part of the equation. The rest of the equation is the managerial and professional responsibility that the defendant in this case had. The defendant in this case I think the phrase is not professional and managerial responsibility. Discretion. Discretion. That's a very different term. I apologize, Your Honor. I meant discretion. And the defendant in this case did exercise that discretion in that he was the sole owner and operator of his company. He directed all of its operations. He submitted applications to Medicare where he claimed that he would or he promised to submit only true, accurate, and complete claims. He agreed that he would comply with all of the laws and regulations of Medicare. He, on his own, solicited clinics for business. He purchased prescriptions knowing that those prescriptions were fraudulent. He determined the amount of money to pay people in kickbacks for those prescriptions and for the medical files. He purchased both the prescriptions and all of the supporting documentation that he would need in the event that he was audited. He applied for lines of credit. He determined the type of wheelchair to give to the patients. And as the court recognized a few minutes ago, a Medicare provider, such as the defendant in this case, is supposed to have the patient visit him. He's supposed to be fitted for the wheelchair. And no pun intended, but one size does not fit all in the case of power wheelchairs. They're supposed to take into account the person's height, their weight, their physical disabilities. In this case, the defendant was prescribed the identical wheelchair for everybody because he would get paid the most money for that. And he knew that they were fraudulent. He also decided... Is there evidence in the record that tells us that depending on the exercise of his judgment or doing his job properly might have resulted in either no power wheelchair at all or a cheaper power wheelchair? Do we know that from evidence in the record? I'm not certain about a cheaper power wheelchair. You just talked about cheaper a moment ago. There is certainly evidence in the record that a provider, such as the defendant, is supposed to fit the patient to the wheelchair that the patient is supposed to visit. I got that part, but I'm trying to figure out what happens once he's out there doing his job properly, which this man clearly was not. And it turns out that the wheelchair he's brought out is for some reason unsuitable. And then what happens? That is not in the record, Your Honor. There's nothing in the plea record as to that. What is in the record is that several people were delivered power scooters, which are cheaper than power wheelchairs and are not covered under the Medicare regulations. And yet the defendant in this case went ahead and fraudulently billed Medicare for the more expensive power wheelchairs. That's clearly in the record excerpts of this case. What creates the fiduciary obligation? He's basically still a vendor, and instead of selling the product directly to the government, he's selling it to a, as I characterized it roughly, he's a third-party beneficiary of an agreement that he has with the government. And instead of delivering it to the government and the government pays, you deliver it to the patient and the government pays. What creates the fiduciary obligation on the part of his company to the government? Is that that he signed the form that he promised to submit honest bills? I believe so, Your Honor, and that he is being entrusted with public funds. And that would create, you know, these are taxpayer funds that are being used to pay him. But that argument proves too much, as I think you've already said, that is to say it's not an automatic abuse of trust when someone overbills the government fraudulently. Is that correct? That's correct, Your Honor. So the fact that he's getting public funds as a result of the fraud is not enough? No, but the discretion that he, the professional and managerial discretion that he exercised. Yeah, that's what I'm trying to figure out. Where is, what is, I mean, I'm sympathetic to the government on this point. This is an outrageous fraud. He's a repeat offender. The penalty that he's got, his sentence is relatively light, even with the enhancement. So I'm trying to figure out sympathetically to the government how we can find abuse of trust. And I'm trying to get you to tell me what is the professional or managerial discretion that's being exercised here. I believe the professional and managerial discretion that is being exercised is in the selection of the product, in the fact that he employed others, oftentimes to make deliveries, that he determined the type of wheelchair, he determined the amount to bill. It's not just some of the cases which rejected abuse of trust, which were cited by the defendant, where they were simply filing a cost report. This is something where he was able to exercise discretion in the selection of the product and in the selection of the billing amount. Okay, I got it. Have you, has the department written to the Sentencing Commission asking them to address this issue, given the conflict? There's certainly a conflict in the circuits about this issue, and usually the Sentencing Commission sort of steps in in such cases. For some reason they haven't. Have you, as a department, asked? I am unaware, Your Honor. I can find out, but I'm not certain about that. I know there clearly is a split in the circuits here, but, you know, between the two. Well, they should ask. I agree, Your Honor. And, actually, I met with somebody from the Sentencing Commission on Friday concerning this. We did discuss the Fifth Circuit adhering strongly to believing that a Medicare provider, such as the defendant in this case, stands in the identical position as a physician in defrauding Medicare. I didn't discuss any application notes or anything like that. It's an excellent idea, and I'll probably call the person when I get back home. Unless the Court has any. She really wants to get the opinion out of us, depending on how it goes. Either way, there probably should be some clarification. Unless the Court has any additional questions, we'll rest on the brief. Thank you. Thank you. Now, you used your time, but would you like a minute in response? Well, a minute? I hate to say it this way. As long as you're saying something interesting, you can keep talking. So you'll know when you're boring, because that's when I'm going to say you're done. Okay. Well, obviously, I just wanted to point out, I'm sure that the Court already knows, that there are some major differences in the various circuits, and recited some of the opinions that are going back and forth. As far as the one thing I'd like to mention a little bit about, is the 10-level increase for the loss amount. That is something that we really haven't gotten to. There were three different bases, the fraudulent claim one, the insufficient or questionable ones, and the arguable claims. As far as the losses on that, whether my client should bear that level of loss seems unreasonable, given that if only one out of 11 individuals who were being looked at with respect to whether there was a questionable loss involving that person, because some of the people obviously were entitled to have these wheelchairs, that he should be given a level of 10 instead of a level 12 on the loss. That would be the argument that I would make. Okay. Thank you. Okay, thank you. Thank both of you. United States v. Egerware now submitted for decision. The next two cases on the calendar have both been submitted, McGinty v. Astrew and Sexton v. Astrew. The next case on the argument calendar this morning, United States v. Unis.
judges: Korman, Farris, Fletcher